May it please the Court, the unusual issues concerning this case as I see them zero in on the fact that we have three false claim actions that are the subject of a contention on the part of the appellees that there has been prior disclosure on the one hand and on the other hand, as a result of that, the lower court made a finding, in fact, both lower courts had made a finding that the relator was not the original source of the information. As a starting point, I think it would be appropriate to clarify something that is not terribly evident from the briefing on both sides, and to that extent I apologize to the Court on my side. And that is the fact that at no time has anyone really laid out for the Court specifically the issue concerning the identity of the contracts that were an issue in Bly-Magee No. 1. For the benefit of the Court, all three of these cases involve over 300 different contracts, not one of which is found in more than one case. For example, in Bly-Magee. How can you tell that from the pleadings? We're dealing with pleadings now, right? Well, first of all, it's evident on the face of the pleadings in Bly-Magee 3 and Bly-Magee 2, the specific contracts are identified. For example, in Bly-Magee No. 2, the complaint asserts overcharges for services not performed on contracts involving Southern California Rehabilitation Services. The complaint alleges overcharges for services not performed on contracts involving Southern California Rehabilitation Services. In Bly-Magee No. 3, the complaint alleges overcharges for services provided to ineligible clients who are criminal convicts with bogus disabilities. It alleges theft of equipment, vans, computers and whatnot. Those are the contracts and those are the allegations, and the specific time frame of those allegations is 1992 to 1997. On the complaint, the face of the complaint of Bly-Magee No. 3, the PRIMO action, the plaintiff alleges, the relator alleges a kickback scheme in awarding contracts in violation of federal procurement regulations to agencies who would falsify matching funds. This is at the excerpted record 056 to 061. She then proceeds to list 54 different contracts by name and number with contractors such as numerous school districts, which the agencies. The excerpted record from Bly-Magee No. 3 would be 056 to 061. The contracts alleged in Bly-Magee No. 3 were totally different. They involved different contracting parties, and of course, they were alleged to have occurred between the operative dates 1995 and 2001. Now, if the court then refers to the excerpted record at page 162 to 167, we have provided in the PRIMO case a list of the specific contracts that were involved in Bly-Magee No. 1, which was reviewed by Judge Pragerson in his ruling on the 12B motion. In that particular document, my client submits a declaration to the court under penalty of perjury that there were 247 contracts involved in Bly-Magee No. 1. Are those pages that are in controversy, ma'am? There was a motion to strike certain pages.  And I'm going to give you a little bit of background on that. So, the court has ruled that there were 247 contracts in Bly-Magee No. 1. However, these documents, this particular documents, are submitted to the court and were submitted to the lower court in Bly-Magee No. 3, not in Bly-Magee 2. So, counsel, of course, has moved to strike it from Bly-Magee 2 because, of course, the 247 contracts in Bly-Magee 1, which are different from the two or three that I've just related to, Your Honors, as having taken place and were pleaded in Bly-Magee No. 2, were totally different. This brings me, I think, to the very first point that I want to make, and that is the fact that in looking at this case, in talking about the prior disclosure, contextually, the earlier litigations as raised by the appellees, we have to focus on the transactional distinction that's required by the cases and the code. There can be no public disclosure if the specific transactions are not alleged, and there can be no prior disclosure if not all of the defendants have been named. And I think that's a very important point, indeed, in looking at the three cases. I mean, I guess there is some case law saying you don't necessarily have to name the particular people. I, of course, decided to the Augustine and Sun Valley gasoline cases in our papers, and I would concede with the Court there probably are, obviously, nuances of the circumstances, but I think the critical point, though, that I'm trying to make is, generalized allegations of fraud, allegations of wrongful conduct, does not constitute public knowledge. What I am saying is, is that when there's been a specific recitation in the pleading showing the contracts, the dates, the places, the individuals that are involved, and more specifically, when I say the transactional nexus, I'm talking about the actual act of the false claims. You don't recover, as the Court knows, for false claims violations by general allegations of fraud, but rather by a showing that is part of the – as part of the underlying claim that there's been a showing by the plaintiff that there's been a submission of a transactional document, a contract or an invoice or whatever the case may be, a claim that – a claim that in and of itself contains – It's very hard to – you perhaps can read them that way, but it isn't easy because there are lots of generalities and the kickback scheme, for example, is alleged in great generality, and it's very hard to tie them down, I mean, except by dates, to individual transactions. It is pretty apparent that there are probably different dates, but other than that, it's very hard. I mean, you're talking as if there's clarity in these complaints, and there isn't. The issue is whether or not, in the context of public knowledge, the issue is whether or not the contracts have been disclosed. Are they different contracts from one case to the next? Clearly, there are from just a simple review of the complaints. Are there different date ranges involved? Clearly, there are from the allegations in the complaint. Are there different individuals involved? Yes, there are, as you go from one to the next. The contention that the appellees make, however, that the – there was public disclosure by nature of the matters that were sued upon in the earlier two cases. The court will – we contend is incorrect, and that's an improper notion, because there cannot be prior disclosure. There cannot be prior disclosure if the earlier contracts sued upon were different contracts involving different people, different dates. Each transaction, Your Honors, could trigger any one of – a number of different governmental regulations. Well, if you allege a – let's say a general scheme, and you say the scheme is that they will falsify the local match by double-counting certain things that the local match is and so on, and you make a general allegation of that kind of conduct, and is it enough that you make that allegation in a manner that would cause a reasonable government to investigate and discover the things that are alleged later in the second action? Well, the – if I understand the question, the – was the United States government placed on notice by the claim that this woman filed to them under seal prior to the opening of this lawsuit to place the government on notice of the need to investigate this further? The answer would be yes, but we haven't gotten to that stage in the litigation. We're still – we stopped at this case at the pleading stage. There's no issue regarding reporting to the government in this particular case. This matter has been – had been reported previously to the government. You're making a statement that in order for something to have been previously disclosed so that you trigger all these things that are – that the district court found to be a hurdle for you, an obstacle. You're saying a disclosure to trigger those things has to be very specific to a particular contract, and I am not sure where that comes from. You can say it comes because a false claim suit is inherently about a particular claim, but if – if there is a general disclosure of a kind of fraud that would put the government on notice that this kind of fraud is occurring, I would think that notice might extend to more than one contract when no contract is alleged. Well, as a – as a prefatory comment to that, of course, if the – once the court makes a determination that there has been a prior public disclosure, then that triggers the second prong of the two-prong test, and that is to determine whether or not the relator is the original source of the information. Right, but I didn't understand you to be arguing to that point yet. Not yet. All I'm – all I'm saying is, is as a threshold proposition in this particular context, we've cited cases that say there's not public disclosure in our belief unless the specific transactions have been shown in the prior cases, and there's not necessarily public disclosure if all of the defendants named in the third case were not named in the second case and conversely in the first case. But this is what's very confusing. First of all, the second case clearly overlaps in large part with the first case. I mean, it was trying to resuscitate in large part the first case. Correct. The third case overlaps just in time in large part with the second case because the – the contracts that you're spelling out in the third complaint are from 95, 96, 97, and the second complaint was filed in June of 97. Correct. And so there seems to be great overlap there as well. Well, actually – actually, there's – there's – if you're talking about a temporal overlap between the cases, perhaps so. But the actual contracts in Bly McGee 2 are not the same contracts as in 3. How do we know what the contracts in Bly McGee 2 are? They are listed in the complaint, and I do not have that page reference from the excerpted record here in front of me. It would be located within the copy of the – I could retrieve for the court – maybe what we can do is I can retrieve for the court that portion of the excerpted transcript for that claim so that I can point the court to the – those references. I don't have it up here at the podium with me right now. Having said what I said, the first argument that we make is that there was no prior disclosure in Bly McGee 3 of the contracts that are at issue in Bly McGee 3. The next we have to shift then to the question of whether or not – Some of them. Let's say some of them. I'm willing to buy in at least other timings, so let's say at least the ones that are post-97. Okay. The next prong in the test is whether or not Ms. Bly McGee was the original source. But I think before we go to the original source argument, perhaps it would be a good time to talk about the audit argument that has been submitted by the appellees. The court will recall that one of the contentions the appellees have made is that there was this audit of heretofore unidentified proportions, date, places, and time that they claim was rendered in the year 2000, and that that, in fact, constitutes another form of public disclosure. Well, we contend that the audit argument is purely a red herring. Both the California Department of Rehabilitation and LACO have submitted briefs here and in the lower court that Bly McGee publicly disclosed her claims in the earlier cases, both of which predate the audit by many, many years. There's no verification of authenticity of the audit. The appellee says the audit was sent to the legislature. There's no date as to when it was sent to the legislature. The audit submitted in the district court?  Pardon me? Was it submitted in the district court, the document? I don't know if it was or not. The audit itself, information from the audit was asserted, but the appellees argued that it was posted on the Internet. There's no authentication as to the audit. There's no verification, no declaration submitted. We don't know. We don't know when it was submitted, how it was submitted. But I will tell you, Your Honors, this. The evidence, the information of the audit was not disclosed until the year 2004 when it was first brought up as part of this case before Judge Pragerson. So we have a serious problem. Furthermore, the audit itself does not constitute the kind of public disclosure that's been defined by the cases because it is not the type of administrative hearing that would qualify under the cases cited in the briefing. That's an issue in itself, but it really hasn't been briefed in this case, except in the utmost of passing. And it's a significant issue, as I understand it, whether or not it's a federal, has to be a federal agency or a state agency. Well, for example, the appellees argue one of the cases they cite is the is the A-1 case. And the A-1, the A-1 case was is kind of an interesting case because in the A-1 case, the Ninth Circuit indicated in the decision that the court agreed with the Dunleavy decision. Now, the Dunleavy decision is a decision we cite that says that certain types of state auditing activities and state disclosures do not qualify for public disclosure. So given given the circumstances, if a one if a one, it would appear that this circuit would be tending to go with the Dunleavy decision in terms of whether or not this audit would even qualify as a so-called administrative hearing. But there's no evidence of what it was. That was one of our complaints about the audit information before the lower court. There's no authentication. Did the district court make any findings, I think? The unit district court. Did the district court make any findings about the audit? About the audit, what it was, whether it was whether it was a public disclosure based on the audit rather than based on the lawsuits. The district court, as I recall, its principal findings were the fact that Bly McGee had been involved in the prior litigations, that based upon representations made to the district court by Appellee's counsel, that the evidence of her involvement in the prior litigation. Can I ask you whether the district court ever evaluated separately the audit as a public disclosure? No. Not that I'm aware of. Not that I'm aware of. I'm not even sure the district court considered it because there was no declaration submitted in support of the information. It was just a statement made by counsel in their argument papers. One of my problems with this case is the jurisdictional issues that are involved here. Because when the question of jurisdiction is dependent on the resolution of factual issues going to the merits, I don't believe that the court this is not the proper case to be disposed of by way of a 12B motion. That's one of my fundamental problems with the case is the jurisdiction issue. That these particular it's a tribal issue of fact whether or not my client was the original source. It's a tribal issue of fact whether or not there was public disclosure. There's one case cited in here where the trial court actually held a bench trial, called a bench trial, and called witnesses to determine these jurisdictional issues first. You have about two minutes left. Do you want to save some time? I think what I'll do, I have two minutes left. I will save my two minutes. Thank you. Good afternoon. May it please the court. If I may start with a clarification from the prior matter that was on the calendar before us, which of course dealt with the public disclosure requirement and the original source requirement. And if I may respectfully, Judge Brezon made a statement that if the original source was not, did not publicly disclose the transactions or allegations, then they basically cannot sue. Respectfully, that is not a correct statement. In fact, that is the reason the original source requirement was added. That's not what Wang holds. I thought Wang holds that the original source has to be the person who had a hand in the public disclosure. That's not correct. In fact. It's correct. That's exactly what Wang holds. Let me give you an example. Let's say, for example, that an employee of an entity involved in fraud and has firsthand knowledge of the fraud, tells a third person, say a friend, say, in fact, what I think has occurred in some of the cases, say a newspaper reporter. Then the newspaper reporter turns around and publishes a story in the New York Times about the fraud occurring at a particular place. Now, could that newspaper reporter turn around and sue because they publicly disclosed it? No. Why not? Because Congress enacted the original source requirement to protect that insider, that person that's privy with direct firsthand knowledge. So that employee, although not publicly disclosing that fraudulent transactions, could turn around. I'm sorry, but the Wang case does hold that they have to have a hand in the original disclosure. Hypothetically, it probably did, but that is what the case holds. Maybe you haven't read it. In Wang, Wang involved, frankly, in our briefing, we focused on the Wang case as part of the original source requirement as an example of what is required of firsthand knowledge. Wang involved an employee, an actual employee. I believe it was FMC Corporation. And not only was that person an employee of the actual entity involved in the fraud, but that employee actually had a hand in working on the Bradley fighting vehicle. That's a different issue. It's what it takes to be an original source. We were discussing something else at that point. Right. And the example I was getting into is right on all fours with the Devlin case, which is kind of the other case. And as an example that might apply here, let's say there's a Department of Rehabilitation employee. And they have firsthand knowledge of supposed fraudulent transactions. And they tell a third person, let's say Charlotte Bly McGee, the relator in this case. And then Charlotte Bly McGee publicly discloses some allegations. The law is clear that Charlotte Bly McGee could not turn around and sue. None of this arises unless there's first a public disclosure, right? So we first have to focus on whether there was a public disclosure. Right. And that is my segue to get back to the public disclosure. And let me do that, if I may. With regard to public disclosure, I think Judge Canby previously addressed the key here. That is that the real issue in a public disclosure isn't whether this particular contract is the same or there's an exact matching of time. Obviously, it's clear that we've made clear. How could it be that if somebody was investigating the allegations made in 1992, that they were going to find out about something that happened in 1999? Well, I think that gets to the issue of the overlap of time periods. And there's a significant period of time overlap. I think you alluded to that earlier. There is, but there's some non-overlap. So I don't ‑‑ I'm having trouble seeing how this investigation theory accounts for the fact that these aren't the best for after complaints, I will agree with you, and it's a little hard to figure out what ‑‑ he says there are discrete contracts and I'm having trouble finding them, but there are at least discrete time periods. Okay. So there being discrete time periods, how can it be that somebody investigating an allegation that certain things happened in 1988, 89, and 90 and 91 was going to find out anything about what happened in 1999? Well, the answer is that there is significant overlap, and if you look in detail at the overlap, not just of the time frames and the people, but the allegations are almost exactly the same. If I may, I've got two cases. Well, I suppose they are, but still you're not dealing with the point. The old ones are out, but there might be something wrong with the things that happen later. How do we know unless it's a trial? Well, what we have here is ongoing allegations of the same exact type of practices, the auditing practices. That isn't a jurisdictional issue at all. The jurisdictional issue is, is she the original source? I find it very hard to tell. Okay, yeah, and we agree with that statement wholeheartedly. Please don't say that what was done in 1990 covers what was done in 99, because it's the same allegation. Maybe, but so what? Well, I agree with that. It doesn't necessarily cover, but there's a lot, the record, the comprehensive total record shows a lot more than that. In fact, the most obvious example of public disclosure between Bly McGee I and Bly McGee II is the caption of Bly McGee II said, a complaint to reinstate the false claims. That's true, and to that degree, obviously she can't do it. But she also had some other stuff that covered a later period. Let me ask you a question. Let's suppose we had a well-drafted set of complaints, and somebody came in and said, there was Medicare, this company committed Medicare fraud on the following five contracts in 1992. They come back the next year, and they say, this same company committed Medicare fraud on the following five contracts in 1993. They come back the following year, and they say, the same company committed Medicare fraud on the following different five contracts in 1994. Is there a problem there? Well, here's the difference in this case, because you said, this company did this particular thing. The underlying similarity in all of these things over the whole period of time- I'm assuming it was exactly the same kind of fraud. I mean, they submitted false- they lied about committing work that they didn't do. But there was one set of contracts in 1992, another set of contracts in 1993, another set in 1994. How can that be the same disclosure? Two points on that. U.S. ex-rel Harshman says that what needs to be disclosed by the investigation is just enough to tip them off to what those practices are. Point two is that in this particular case, we're talking about a limited subject matter. One, we're talking- Okay, what happened in 1992? When's he going to find out what happened in 1994? But the allegations of Bly-McGee I, which started in 92, actually carried, I believe, from 1992 up until 1995. And then Bly-McGee II actually talked about starting with- All right, but let's assume, because it's true, that there's some period of non-overlap. Let's deal with that. Because the bottom line here is it was enough to disclose- we're talking about vocational rehabilitation funds with one state agency with a limited number of actors dealing with one very specific area. And we're talking about third-party cooperative agreements. That is a very specific practice dealing with a very certain limited number of people. That's why you see the same names surfacing. But actually, the first complaint dealt with equipment. The second complaint was somewhat broader and dealt with services and other things. They're all vague and difficult to read, but they are somewhat different. And the third one dealt with this supposed kickback scheme. Now, on the merits, there may well be nothing there, but how can we say that they're not different? Well, first, I wholeheartedly agree with the statement that this is a very poorly pled complaint. We stated in our brief that that's an additional ground for affirming dismissal. That may be the best ground, but the rest of it I'm having a real problem with. But if you look very specifically at each of the types of the things, again, the bottom line is was there enough that would tip off the federal government that this is what's going on? We're talking about a very limited type of practice. That is, third-party cooperative agreements. This thing about, if you look specifically, oh, they talked about equipment in Bly McGee II. Well, then they talked about, I believe they were more general about third-party contracts in Bly McGee III. But they're still talking about the same type of practice, false certification, awarding contracts to friends of the department, kickbacks. It's called a kickback in one case, but then it's called a bunco scheme somewhere. I mean, we're talking labels here, but at the end of the day, the practices underlying this whole ongoing thing is against the same people for the same practices, which if the federal government was told about one transaction, they would be able to go, okay, what's going on here? But that really gets back to the hypothetical question. It seems to me if you had a very perfectly discreet problem, these people submitted a false claim by false applying their labor figures for job number one in 1992. That's one lawsuit. The next year, you come in and say they did the same thing with a different contract in 1993. That second action would not have been publicly disclosed by the first lawsuit. If I may, with regard to the appellant has emphasized the specific contracts, but if I may address this specificity of contract, it's not there. It's not in the pleadings. I guess we're never getting an answer to the hypothetical. And that is if it is specific and successive and it's the identical kind of conduct, but it's for two different claims submitted to the government for two different years. Then I'd have to say it's speculative. I would have to look at those contracts. And then if we have those alleged, then we can respond to them. We don't have those. What we do have, in fact, if I may get more specific in this address. I agree it's tough to get specific because those contracts aren't alleged. In fact, that's the subject of our motion to strike on the Bly-McGee II where for the first time on appeal, they submitted this unsubstantiated list of contracts. In fact, in Bly-McGee I, the opposition to summary judgment, which was attached as exhibits to the complaint of Bly-McGee II, talked about a completely different thing. And frankly, this talk about specific contracts from the appellant is a little disingenuous and contradicted by their own pleading. What did they say in that opposition which was attached to Bly-McGee II's complaint? They said, we're talking about improprieties in grantees statewide. Failure to maintain inventory, account for equipment, get bids, not advertising. In fact, and it's stated in our brief, they found that the pervasive scheme of this type of practice, not one contract, this type of practice itself is a false claim. So their own pleading contradicts this thing about specific. Specifically, provision of services to ex-cons who are not eligible, overcharging for client services not provided, costs incurred for services for people who aren't eligible. Were those allegations in Bly-McGee I? Substantively. Not with that kind of specification, but Bly-McGee II was basically to reinstate the prior claims. No, that was part of it. It wasn't all of it. It doesn't help if you don't deal with what was before that. Bly-McGee II final complaint had two parts to it. Part of it was to reinstate the prior complaint. The part of it was not. So let's deal with the part that was not. Okay? Yeah. The part that was not had allegations of the kind I just read. Were those in Bly-McGee I? No. So why isn't that different? Because the transactions at issue are sufficient to give the federal government notice to conduct an investigation into the practices. The bottom line issue is that if the federal government looked into the transactions in Bly-McGee I, that was enough to tip them off to the practices in Bly-McGee II. Well, now let's take the use of the convicts. How would they have found out about the convicts being rehabilitated? Not to overemphasize this, but as I said before, Harshman talks about that. Let's say there's an allegation. What talked about? I'm sorry. What I'm trying to say is that if they went in and looked at the, let's say, the issue about convicts, bogus convicts in contracts. Under Harshman, if the federal government went in and looked at that, and that was sufficient to get them into the realm to find out about all of these practices. No, no, no. We've got to visualize this. The convicts are not mentioned in I. How do they find, by following up on I, how do they find out about the convicts? Because of the type of transaction. Tell them to be concrete about it. How do they find out? Because it's one department dealing with one type of fund with a very small number of employees. Similar to Harshman where I think we had a union which dealt with a very... Please don't give us another case. Give us the facts in this one. How do they go to the convicts from what they know? Because there's a limited number, perhaps however many defendants we have here who over the years have worked for the Department of Rehabilitation. They're the same people. It's because of the same people. Exactly. Same type of people in the same position. They can do lots of different bad things, right? The federal government goes in and says, okay, we've been told... So your position is that if you allege that a group of people have piled false claims, that's it? I mean, in other words, if they've piled some kind of false claims, the government can investigate and find any other kind of false claims. No, if it leads them, if the similarities between the two leads them to reveal the same type of fraudulent practices, then yes. And in this case, we believe that that is clearly the case. For example, if complaint number one says they're selling... They're filing false claims because they're stating that they're doing services they're not doing. Complaint number two covering a different time period says they're filing false claims because they're stealing equipment. Those are... But it's the same people in the same department. Dealing with the same type of funds, same type of service. Same services, but different wrongdoing. In this case, if you look very closely at the matching of the allegations, it's our... Yes, that would lead them to find the same operative facts. What is this practice that is going on at the Department of Rehabilitation? The practice is that they're filing false claims. That's really your statement. They're filing false claims. These people are filing false claims. The basic underlying... Well, the underlying allegation is that these contracts, these third-party contracts... They're filing false claims with regard to third-party contracts. As opposed to... I'm sure they have numerous other contracts with other entities for other purposes. So we're talking about one part of their function with certain types of contracts, which are administered by a limited group of people, and it's talking about failure to audit, failure to maintain records. So, I mean, it would be very easy for the federal government to go in and say, we want to see all your records about third-party contracts for vocational rehabilitation because these allegations have tipped us off that you're not doing it right. I want to see all your records for years 91 through 2000. They couldn't have said that in 1991. In 1992, when the first case was filed, they couldn't have said that. Right. We're looking retrospectively. We're not looking retrospectively. We're looking about whether, by the allegations in 1992, they could have investigated that would happen in 2000. Well, I think it actually goes the other way around. I mean, you're talking about retrospectively, for example, Bly-McGee II filed in 97 under seal. The issue is looking backwards. Was it disclosed in 92? That's the question. Was it disclosed in 92? Right? So what would they have investigated in 92? But we're not trying to bar Bly-McGee I. We're trying to bar Bly-McGee II. So 92 is going too far back, frankly. We're talking about the period of the false claims that started with Bly-McGee II. And frankly, again, the allegations are a little unclear when the overlap and the plaintiff had changed from one complaint to the next. They changed the period that they apply to. So it is a difficulty to deal with, kind of a very uncertain complaint. I think you have a friend over there who wants to argue a little bit. I wrote some different parts. Yes, I know. Well, you didn't inform us that you were both arguing. Well, no one informed us as to how you were dividing time. But we will give you a few minutes. If I may briefly address the – No, I think that's okay. You need to stop now. Okay. Thank you. Ordinarily, what you do is you – I have no idea that there were two people who were supposed to have time. Ordinarily, you would stand up and you'd say, I'm going to argue for so long and my colleague is going to argue for so long. I apologize. I thought we had specified the time before. My apologies, Your Honor. May it please the Court, my name is Joseph Stark. I represent the County of Los Angeles and the Los Angeles County Office of Education. I have a slightly different perspective on this matter than my predecessor insofar as both LACO and the County of Los Angeles have been named only in Bly-McGee 3. Bly-McGee 3 alleges affirmatively that the plaintiff gathered all of her information between 1995 and 2001 in an investigation that she engaged in after she was denied benefits. My understanding is you're agreeing that there was a public disclosure according to the original source question. Well, I believe, Your Honor, that there was a public disclosure in – That there was not a public disclosure. No, I – Well, no, I'm wrong. Okay, go ahead. I believe there was a public disclosure both in the predecessor lawsuits and in the audit, Your Honor, and I think that the timeline here is very critical. Give us the information on the authenticity of the audit. Your Honor, it is a public record. It's a public record of the State of California. I think it self-authenticates. Is it introduced in this case? Yes, Your Honor. It was introduced in the reply by the State of California in opposition – or the reply to the opposition to the 12B lawsuit. Was it submitted to the court? Yes. All right. Absolutely. And it's in the record. And the district court didn't rely on it. District court may or may not have relied on it. It's silent in its opinion as to whether or not it relies on it, but certainly as to the grounds upon which the court relied, whether they are the prior publication in Bly-McGee 1 and 2 or the audit, so long as the trial court's decision was correct. Well, it was not clear in terms of actually covering the material that was in Bly-McGee 3. Oh, absolutely. And, in fact, it was issued in February of 2000, just shortly before Ms. Bly-McGee filed Bly-McGee 3. We have a serious legal question, which has been just briefed in passing here, which is whether or not this kind of disclosure counts. Your Honor, I think that the code answers that question, and 3730E-4A specifically provides that audits are the type of disclosure that are – I could be wrong about this, but I thought there was a circuit conflict on the question of whether that means federal audits or whether state audits count. I believe you're correct, Your Honor. There is a conflict, but I think the logical issue here is whether or not the information that underlies the QUITOM action has been made available to the government. And in that context, a published audit by the State Auditor of the State of California clearly lays out all of the facts and circumstances which underlie Bly-McGee 3. It only admits of certain things and not others. Again, Your Honor, we go back to the issue of whether a specific contract is – you go contract by contract or under Harshman if you go by the scheme and the nature. Did the audit find any wrongdoing? The audit found that there were some questionable issues as to the expenditure of funds, but that the types of contracts that we are – that are here at issue, which are these cooperative agreements between the State and the County of Los Angeles or the State – the County Office of Education. They're called cooperative agreements. And the audit specifically found that those were acceptable. But it went to great lengths to discuss what those were, how they came about, what they were. If that was a wrongdoing, clearly anyone looking at that audit could look at that and go, that's a wrongdoing. I mean, I think you're on pretty strong ground except for the sleeper question, and I'm disturbed that it wasn't really briefed here. As I understand the dispute, it's that the language says, in a congressional administrative or government accounting office report, hearing, audit, or investigation. And given the specificity of that provision, some courts have held that because it refers to Congress and to the government accounting office report and hearing, audit, or investigation, that administrative refers to the federal government, not to state governments. The theory being, I suppose, that since it's the United States that's supposed to be finding this out, what's going on in state audit reports is not relevant. Respectfully, Your Honor, I think that is too narrow a review of that section. And in fact, given the Congress's purpose in trying to avoid opportunistic plaintiffs, such as Ms. Bly-McGee in this instance, I think that it would be an inappropriate reading of the statute to limit it simply to U.S. congressional audits. Well, it doesn't apply to legislation, to legislative audits. I mean, state legislature, because it only applies to congressional administrative or government accounting office. So it would have to come under administrative or it wouldn't work. Or a government accounting office. It does not specify. Government accounting office capitalized. That's the United States government accounting office. Again, Your Honor, we're dealing with an issue of policy here, and I submit to the Court that it would be inappropriate, given the policy provisions underpinning these amendments in 1986, to allow someone to bring a ketam action based effectively upon the public disclosure by the state auditor of a set of transactions. If I may close, both the D.C. Circuit and the Second Circuit, the D.C. Circuit in the Findley matter, the Second Circuit in the Croyler matter, have found specifically that the types of allegations that are brought to bear here are simply insufficient to establish that Ms. Bly-McGee is an original source. That goes beyond the issue of prior publication, I grant you. And that she's not an original source because what's the reason? Because the entirety of the Bly-McGee 3 action, by her own allegation, is based upon her review of public documents. It is based upon her review from 1995 to 2001 of public documents which were already public. She's very vague, and she doesn't really know. Just her own review and nothing else. If I may, actually, no, Your Honor. We have the audit as well, but in terms of... Did she say she reviewed the audit or not? She did not allege that, Your Honor. We're trying to deal with a jurisdictional question. I understand that at the record at page 47, paragraph 26, you'll find the allegation there that Ms. Bly-McGee... But we don't get to that unless there's a public disclosure. Correct, Your Honor. Which has to be either the prior cases or the audit. I think it is either one of the two, and certainly with respect to Bly-McGee 3, when we are 10 years down the line from the last time Ms. Bly-McGee was involved or in any way engaged in a business that had anything to do with the State of California. That doesn't help you until there's a public disclosure. I agree, Your Honor, and I think that there was. Thank you very much. It's a very strange statute in many ways. A couple of brief comments. Even if the audit is a public disclosure, there is a triable issue of fact as to whether or not Bly-McGee is the original source. The two cases that we've cited are Dunleavy and Williams from two other circuits the Court has referred to. I would also point out the fact that before the lower court, we asked for clarification from the judge. We asked for leave to amend. Our client submitted a declaration in great, great detail that outlined to the judge. It doesn't say much on anything. It doesn't give you any idea where she got this from. What does it say? Well, let me grab some sections of it, Your Honor. In fact, we ripped it in our briefs, and she states in her declaration to the Court. I was an original source. I found it of my own knowledge. Oh, she said much more than that, much more than that. See, this was one of the problems we had with the lower court's ruling. Based on this declaration, at the very least, the trial court should have given us leave to amend. Because the truth of the matter is, if you turn to our reply brief, I believe it's on page 45 is where it starts. We have an excerpted section that starts on the previous page. But just by way of a couple of brief examples, she indicated that she personally uncovered and observed the misappropriation. She listed the agencies that she had gone to, indicating that because of her prior employment with Southern California Rehab, she had access to get in the door of all of these other different agencies. Look at the agencies, Asian Pacific Treatment Center, Portals, Oasis House, Dubnoff Center, D.D. Hirsch Center, Beverlywood, Step Up, Rio Hondo. These are just the allegations against the attorney general. I'm having trouble seeing why those are not why there's not absolute immunity as to them. Can you explain why not? Because the because this court's already determined that they don't have immunity. That's why the try to reallege. Well, this this. Well, the problem the problem was, if you look at the chronology of what happened with the trial court, we were faced with a myriad of different problems. We were we were literally dismissed as soon as we got out of the court of appeals. Now, the current complaint, I would like you to in one sentence or two to tell me why it's not within the absolute immunity. Because the this court had made the determination that spoliation of evidence, eliciting false testimony and depositions, eliciting false information, failing to disclose information and discovery was was information and conduct that was outside the course and scope of the office of the representatives of the office of the attorney general. And as such, there was no immunity that would attach to their conduct specifically found. We never got past the pleading stages with Judge Kelleher in order to in order to pursue these matters. They are alleged in Bly McGee in Bly McGee, too. But this but this court in the Bly McGee decision determined specifically that spoliation of evidence, eliciting false testimony and depositions and and suborning incorrect information in discovery is a fraud on the court. And it's outside of the scope of the of the O.A.G. representatives who were involved. And that was the primary predicate upon which Bly McGee, too, was reversed by this court was that was that false conduct, which, of course, related back to the reason why Bly McGee one got dismissed to begin with, because Judge Kelleher had relied on those on that improper discovery in order to grant summary judgment. The woman was improper at the time, and that's what happened here. That's the sequence of events. Thank you very much. Just one question. You've said a couple of times that there's a tribal issue of fact. Now, we're not dealing with summary judgment. We're dealing with a 12B1 dismissal. What was what was the proceeding? Was this done only on declarations or was there testimony, live testimony on the jurisdictional issue? Well, there was no live testimony. And and and the the appellees did not submit any declarations that I recall or any any authenticatable evidence to rebut the contentions of my client. And that's why I think it's so important to recognize the fact that she listed out chapter and verse what she did over the years to uncover this information. She lists the agency she'd gone to. I didn't I didn't want to open all of this. I just wanted to know what kind of a proceeding it was. It was all done on the documents. It was it was done on the documents. There was no live hearing and there was there was no no reliable evidence submitted in rebuttal to our evidence by the trial court. And I would submit it was an abuse of discretion to not at least give us leave to amend given those circumstances. Thank you very much. Thank you. Thank you, Your Honors.
judges: Canby, Noonan, Berzon